# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **TIMOTHY DOYLE YOUNG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 5:15-14151** |
| | ) | |
| **MATTHEW MELLADY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Defendants' Motion for Summary Judgment (Document No. 18), filed on December 17, 2015; and (2) Plaintiff's Motion for a Preliminary Injunction (Document No. 34), filed on February 22, 2016. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 21.) Plaintiff filed his Response in Opposition on January 14, 2016. (Document No. 23.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion for Summary Judgment should be granted and Plaintiff's Motion for a Preliminary Injunction should be denied.

### PROCEDURAL HISTORY

On October 19, 2015, Plaintiff, acting *pro se* and an inmate at USP Florence, filed his Complaint pursuant to 5 U.S.C. § 552(a)(4)(B), alleging that he requested and was wrongfully refused certain information pursuant to the Freedom of Information Act ["FOIA"].[1] (Document

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less stringent

No. 1.) Plaintiff names the following as defendants: (1) Matthew Mellady, Mid-Atlantic Regional Counsel; and (2) the Bureau of Prisons ["BOP"]. (Document No. 1.) Plaintiff alleges that Defendants are "withholding discloseable records in violation of BOP policy to conceal Eighth Amendment violations." (Id., p. 1.) Plaintiff explains that "[t]he records in question are blood test results that prove the BOP is withholding diagnosis and treatment for Hepatitis-C, a deadly disease." (Id.) Plaintiff contends that the foregoing is "placing his life in imminent danger." (Id., pp. 1 - 3.) As relief, Plaintiff requests monetary and injunctive relief. (Id., pp. 3 - 4.) As Exhibits, Plaintiff attaches the following: (1) A copy of a letter from Defendant Mellady to Plaintiff dated August 27, 2015 (Id., p. 5.); and (2) A copy of a letter from Plaintiff to Defendant Mellady dated September 22, 2015 (Id., pp. 6 - 7.)

By Order entered on November 12, 2015, United Magistrate Judge R. Clarke VanDervort granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process.[2] (Document No. 7.) On November 30, 2015, Plaintiff filed additional exhibits in support of his Complaint: (1) A copy of Plaintiff's "Informal Resolution Form" dated April 14, 2015, complaining that "the hospital has not answered my requests" (Document No. 14, p. 3.); (2) A copy of Y. Fetterhoff's Response to Plaintiff's BP-8 dated May 1, 2015[3] (Id., p. 4.); (3) A

---

standard than if they were prepared by a lawyer and therefore construed liberally. See *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed. 652 (1972).

[2] By Standing Order, this matter was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 2.) By Order entered on January 6, 2016, the above case was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for deposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 17.)

[3] Although Plaintiff alleges that Ms. Fetterhoff has imposed a "false debt" and refuses to allow him to review his medical records, the record does not support such a claim. Ms. Fetterhoff

copy of Plaintiff's "Request for Administrative Remedy" dated May 7, 2015 (Remedy Id. No. 821585-F1) (Id., pp. 6 – 7.); (4) A copy of the "Receipt – Administrative Remedy" dated May 20, 2015, from the Administrative Remedy Coordinator at Florence ADMAX USP regarding Remedy Id. No. 821585-F1 (Id., p. 8.); (5) A copy of an "Extension of Time for Response" dated June 1, 2015, from the Administrative Remedy Coordinator at Florence ADMAX USP regarding Remedy Id. No. 821585-F1 (Id., p. 9.); (6) A copy of Plaintiff's "Administrative Remedy Generalized Retrieval" dated July 25, 2015 (Id., p. 10.); (7) A copy of Warden J. Oliver's Response dated August 21, 2015, regarding Remedy Id. No. 821585-F1 (Id., p. 11.); (8) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated July 2, 2015 (Remedy Id. No. 821585-R1) (Id., p. 12.); (9) A copy of the "Rejection Notice" dated July 9, 2015, from the Administrative Remedy Coordinator at the North Central Regional Office regarding Remedy Id. No. 821585-R1 (Id., p. 13.); (10) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated July 23, 2015 (Remedy Id. No. 821585-A1) (Id., p. 14.); (11) A copy of the "Rejection Notice" dated September 3, 2015, from the Administrative Remedy Coordinator at the Central Office (Remedy Id. No. 821585-A1) (Id., p. 15.); (12) A copy of Plaintiff's "Request for Administrative Remedy" dated June 17, 2015, complaining that "the psychology department is not answering [his] written requests" (Remedy Id. No. 825573-F1) (Id., pp. 16 – 17.); (13) A copy of the "Rejection Notice" dated June 22, 2015, from the Administrative Remedy Coordinator at Florence ADMAX USP regarding Remedy Id. No. 825573-F1 (Id., p. 18.); (14) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated July 1, 2015 (Remedy Id.

---

notified Plaintiff that he should inform her of a range of dates and he will have 15 – 20 minutes to review his medical records. Ms. Fetterhoff notified Plaintiff that he may flag pages he wishes to have copies of and such copies will be made when he pays "for medical record copies [he] has already received. (Document No. 14, pp. 5 – 6.)

No. 825573-R1) (Id., p. 19.); (15) A copy of a "Rejection Notice" dated July 23, 2015, from the Administrative Remedy Coordinator at the North Central Regional Office regarding Remedy Id. No. 825573-R1 (Id., p. 20.); (16) A copy of Plaintiff's "Certificate of Service" dated August 7, 2015 (Id., p. 21.); (17) A copy of a letter from Plaintiff addressed to Counselor Padilla regarding "missing mail" (Id., p. 22.); and (18) A copy of Plaintiff's "Informal Resolution Form" dated November 16, 2015, regarding Plaintiff's complaint of "missing mail" (Id., p. 23.).

On December 17, 2015, Defendants' filed their Motion for Summary Judgment and Memorandum in Support. (Document Nos. 18 and 20.) First, Defendants argue that "[t]he Department of Justice, of which the Bureau of Prisons is a component, is the proper party in this action." (Document No. 20, pp. 2 – 3.) Second, Defendants argue that "[t]he agency conducted an adequate search." (Id., pp. 3 – 4.) Accordingly, Defendants request that Plaintiff's Complaint be dismissed. (Id., p. 5.)

As Exhibits, Defendants attach the following: (1) The Declaration of Sharon Wahl (Document No. 19.); (2) A copy of Plaintiff's FOIA Request dated August 3, 2015 (Document No. 18-1, p. 2.); (3) A copy of the Acknowledgment Letter dated August 14, 2015, from the Department of Justice ["DOJ"] acknowledging receipt of Plaintiff's FOIA Request (FOIA Request No. 2015-07079) (Id., pp. 4 – 5.); (4) A copy of the Search Report dated August 18, 2015 (Id., p. 7.); (5) A copy of the "blank page" containing only blue lines (Id., p. 9.); (6) A copy of the "Non-Responsive Records," which includes a letter to Dr. Moody dated January 2, 2015, "Life-Threatening (Panic) Limits," and a "Result Chart" (Id., pp. 11 – 13.); (7) A copy of the Determination Letter dated August 27, 2015, from the Defendant Mellady addressed to Plaintiff regarding FOIA Request No. 2015-07079 (Id., p. 15.); (8) A copy of the letter dated September

22, 2015, from Plaintiff to Defendant Mellady regarding FOIA Request No. 2015-07079 (Id., pp. 17 – 19); (9) A copy of an e-mail dated October 9, 2015, from Ms. Wahl to Johnna Todd regarding FOIA Request No. 2015-07079 (Id., p. 21.); (10) A copy of Plaintiff's FOIA appeal dated September 24, 2015, regarding FOIA Request No. 2015-07079 and stamped received by the DOJ on October 13, 2015 (Id., pp. 23 – 25.); (11) A copy of the Determination Letter dated October 19, 2015, from the Defendant Mellady addressed to Plaintiff regarding FOIA Request No. 2016-00329 (additional response for FOIA Request No. 2015-07079) (Id., pp. 27 – 28.); (12) A copy of the Acknowledgment Letter dated October 20, 2015, from the DOJ acknowledging receipt of Plaintiff's appeal regarding FOIA Request No. 2015-07079 (Id., p. 30.); (13) A copy of a letter dated November 18, 2015, from the DOJ addressed to Plaintiff denying his appeal regarding FOIA Request Nos. 2015-07079 and 2016-00329 (Id., pp. 32 - 33.); (14) A copy of a letter dated December 3, 2015, from the Defendant Mellady to Plaintiff regarding the illegible document regarding FOIA Request No. 2015-07079 (Id., p. 35.); and (15) The Declaration of Yvette Fetterhoff (Document No. 18-2.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on December 18, 2015, advising him of the right to file a response to Defendants' Motion for Summary Judgment. (Document No. 21.) On January 14, 2016, Plaintiff filed his Response in Opposition. (Document No. 23.)

As Exhibits, Plaintiff attached the following: (1) A copy of Plaintiff's pertinent BOP medical records (Id., pp. 27 – 29, 31 and Document No. 23-1, p. 63.); (2) A copy of his lab result for February 28, 1997, indicating that Plaintiff was positive for Hepatitis-C (Document No. 23, p. 30.); (3) A copy of Plaintiff's "Inmate Skills Development Plan" dated June 6, 2014,

November 28, 2014, May 21, 2015, and November 12, 2015 (Id., pp. 35 – 43.); (4) A copy of Plaintiff's "Request for Administrative Remedy" dated May 1, 2015, regarding the denial of antacids (Remedy Id. No. 818804-F2) (Id., p. 43.); (5) A copy of the Warden J. Oliver's Response dated September 28, 2015 (Remedy Id. No. 818804-F2) (Id., p. 44.); (6) A copy of Plaintiff's "Claim for Damages Standard Form #95" (Id., pp. 45 – 46.); (7) A copy of a letter from the Administrative Appeals Staff dated March 18, 2014, affirming the BOP's action regarding FOIA Request No. 2013-12028 (Id., pp. 47 – 48.); (8) A copy of a letter from Associate Director Janice McLeod stating that Plaintiff's appeal was closed due to Plaintiff's failure to pay his past-due fee regarding FOIA Request No. 2013-12028 (Id., p. 49.); (9) A copy of Plaintiff's "FOIA Appeal' dated October 30, 2013, regarding FOIA Request No. 2013-12028 (Document No. 23-1, pp. 1 – 2.); (10) A copy of a letter dated April 30, 2014, from the DOJ to Plaintiff regarding his Administrative Tort Claim (Id., p. 3.); (11) A copy of a letter dated June 10, 2014, from the BOP acknowledging receipt of Plaintiff's Administrative Tort Claim (TRT-NCR-2014-04487) (Id., p. 4.); (12) A copy of a letter dated October 16, 2014, from the BOP to Plaintiff denying his Administrative Tort Claim (TRT-NCR-2014-04487) (Id., p. 5.); (13) A copy of Plaintiff's Affidavit dated November 24, 2015 (Id., pp. 6 – 9.); (14) A copy of an article entitled "Hepatitis-C cases soar due to drug use" (Id., p. 11.); (15) A copy of Plaintiff's "Request for Administrative Remedy" dated June 3, 2014, regarding his request for medical records (Remedy Id. No. 782472-F1) (Id., pp. 12 – 13.); (16) A copy of the Warden's Response dated December 18, 2014, regarding Remedy Id. No. 782472-F1 (Id., p. 14.); (17) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated February 23, 2015, regarding alleged misconduct by Ms. Fetterhoff (Remedy Id. No. 782472-R4) (Id., pp. 15 - 16.); (18) A

copy of Regional Director Paul M. Laird's Response to Plaintiff's "Regional Administrative Remedy Appeal" regarding Remedy Id. No. 782472-R4 (Id., p. 17.); (19) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated March 20, 2015 (Remedy Id. No. 782472-A3) (Id., pp. 18 – 19.); (20) A copy of Administrator Ian Conners' Response dated July 29, 2015, denying Plaintiff's appeal regard Remedy Id. No. 782472-A3 (Id., p. 20.); (21) A copy of Plaintiff's "FOIA Request" dated April 8, 2015 (Id., p. 21.); (22) A copy of a letter dated April 17, 2015, from the DOJ to Plaintiff acknowledging receipt of his FOIA Request (FOIA Request No. 2015-04410) (Id., pp. 22 – 23.); (23) A copy of a letter dated June 3, 2015 and June 9, 2015, from the DOJ to Plaintiff regarding the status of his FOIA Request No. 2015-04410 (Id., pp. 24 - 25.); (24) A copy of a letter dated July 16, 2015, from the DOJ acknowledging receipt of Plaintiff's appeal regarding FOIA Request No. 2015-04410 (Id., p. 26.); (25) A copy of a letter dated September 10, 2015, from the DOJ addressed to Plaintiff denying his appeal regarding FOIA Request No. 2015-04410 (Id., p. 27.); (26) A copy of Plaintiff's "Informal Resolution Form" dated September 28, 2015, requesting the "correction of records" (Id., p. 28.); (27) A copy of Plaintiff's "Request for Administrative Remedy" dated October 7, 2015 (Remedy Id. No. 839539-F1) (Id., pp. 29 - 30.); (28) A copy of a "Rejection Notice" dated October 20, 2015 from the Administrative Remedy Coordinator at Florence ADMAX USP regarding Remedy Id. No. 839539-F1 (Id., p. 31.); (29) A copy of Plaintiff's "Informal Resolution Form" dated November 9, 2015, requesting the "correction of records – the responses for #782472 are false" (Id., p. 32.); (30) A copy of Plaintiff's "Request for Administrative Remedy" dated November 20, 2015 (Remedy Id. No. 843237-F1) (Id., pp. 33.); (31) A copy of a "Rejection Notice" dated November 23, 2015 from the Administrative Remedy Coordinator at Florence ADMAX USP regarding

Remedy Id. No. 843237-F1 (Id., p. 34.); (32) A copy of the Determination Letter dated August 25, 2015, from the DOJ addressed to Plaintiff regarding his request for "copies of all BP-199 withdrawal forms charged to [Plaintiff's] inmate account or an itemized list of all charges made to [Plaintiff's] inmate account in February and March 2007 (FOIA Request No. 2015-05741) (Id., p. 36.); (33) A copy of the responsive documents as attached to the DOJ's Determination Letter dated August 25, 2015 (Id., pp. 37 – 38.); (34) A copy of Plaintiff's "FOIA Appeal" dated September 24, 2015 regarding FOIA Request No. 2015-05741 (Id., p. 39 – 41.); (35) A copy of a letter dated December 15, 2015, from the DOJ addressed to Plaintiff denying his appeal regarding FOIA Request No. 2015-05741 (Id., pp. 42 - 43.); (36) A copy of a letter dated April 24, 2006, from the BOP addressed to Plaintiff concerning his request for "a copy of the sanitized Sentry index for all administrative remedies filed at the North Central Regional Office by inmates from ADX Florence for the time period of January 1, 2003, through March 5, 2006 (FOIA Request No. 2006-4455) (Id., pp. 44 – 45.); (37) A copy of a letter dated May 23, 2006, from the BOP addressed to Plaintiff regarding his request for an index of tort claims, mailroom records, money order receipts, administrative remedy files and responses (FOIA Request No. 2006-03756) (Id., pp. 46 – 47.); (38) A copy of letter dated September 11, 2012, from the BOP denying Plaintiff's Administrative Tort Claim (Id., p. 48.); (39) A copy of Plaintiff's Affidavit dated December 12, 2015 and January 6, 2016 (Id., pp. 49 - 52.); (40) A copy of Plaintiff's "Informal Resolution Form" dated October 6, 2015, complaining that "the hospital continues to ignore written requests" (Id., p. 53.); (41) A copy of Plaintiff's "Administrative Remedy Request" dated October 27, 2015 (Remedy Id. No. 840914-F1) (Id., pp. 54 - 55.); (42) A copy of Warden B. True's Response dated November 23, 2015, regarding Remedy Id. No. 840914-F1

(Id., p. 56.); (43) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated December 2, 2015 (Remedy Id. No. 840914-R1) (Id., p. 57.); (44) A copy of Regional Director Sara M. Revell's Response to Plaintiff's "Regional Administrative Remedy Appeal" dated December 16, 2015, regarding Remedy Id. No. 840914-R1 (Id., p. 58.); (45) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated January 4, 2016 (Remedy Id. No. 840914-A1) (Id., p. 59.); and (46) A copy of letters to Dr. Santini regarding prescription for medication dated September 23, 2015 and December 3, 2015 (Id., pp. 60 – 62.).

On February 22, 2016, Plaintiff filed his "Motion for Preliminary Injunction." (Document No. 34.) Specifically, Plaintiff requests that this Court direct the DOJ or United States Attorney General Loretta Lynch to do the following: (1) "Release [Plaintiff's] requested records;" (2) "Remove the staff members from BOP employment who have violated the criminal statutes and [Plaintiff's] constitutional rights;" and (3) "Provide for the safekeeping and care of all persons charged with or convicted of offenses in accordance with 18 U.S.C. § 4042 and the Eighth Amendment." (Id.)

On April 11, 2016, Plaintiff filed an "Addendum to Response." (Document No. 39.) Specifically, Plaintiff filed the following Exhibits: (1) A copy of Plaintiff's Affidavit[4] (Id., pp. 2 – 5.); (2) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated January 4, 2016, regarding the denial of his prescription for Ranitidine (Remedy Id. No. 840914-A1) (Id., p. 6.); (3) A copy of the "Reprint Management" for the Law Library (Id., p. 8.); (4) A copy of Plaintiff's "Informal Resolution Form" dated February 29, 2016, complaining that his "BP-11 was delayed" (Id., p. 9.); (5) A copy of a letter dated March 7, 2016, from Unit Counselor J.

---

[4] Plaintiff asserts that prison officials delayed the "date-stamping of #840914-A1" to prevent proper exhaustion. (Document No. 39, p. 2.)

Holbrooks regarding the delay in processing Plaintiff's administrative remedies (Id., p. 10.); and

(6) A copy of a "Rejection Notice" dated February 4, 2016, from the Administrative Remedy

Coordinator at the Central Office regarding Remedy Id. No. 840914-A1 (Id., p. 11.).

On June 20, 2016, Plaintiff filed his second "Addendum to Response." (Document No.

50.) Plaintiff states that his "attached affidavit and nine exhibits show that the DOJ has continued

its misconduct by committing new violations after the Defendants' Motion for Protective Order

was filed on April 12, 2016." (Id., p. 1.) In support, Plaintiff attaches the following Exhibits: (1)

Plaintiff's Affidavit (Id., pp. 2 – 3.); (2) A copy of Plaintiff's "Administrative Remedy Request"

dated May 24, 2016, regarding the "staff misconduct of the Administrative Remedy Clerk"

(Remedy Id. No. 863737-F1) (Id., p. 4.); (3) A copy of Plaintiff's "Informal Resolution Form"

dated May 16, 2016, regarding the alleged misconduct of the Administrative Remedy Clerk (Id.,

p. 5.); (4) A copy of Plaintiff's "Administrative Remedy Request" dated April 27, 2016, alleging

that "Ms. Trujillo is withholding my records without a reason and is misdirecting me to use the

FOIA" (Id., p. 6); (5) A copy of Plaintiff's BP-8 dated April 7, 2016, requesting a copy of his

"grievance and the Rejection Notice for # 839539-F1" (Id., p. 7.); (6) A copy of Plaintiff's

"FOIA Request" dated April 27, 2016, requesting "a copy of [Plaintiff's] BP-9 grievance and the

Rejection Notice for # 839539-F1" (Id., p. 8.); (7) A copy of a letter dated May 6, 2016, from the

DOJ acknowledging receipt of Plaintiff's "FOIA Request" (FOIA Request No. 2016-04357) (Id.,

p. 9.); (8) A copy Plaintiff's "FOIA Appeal" alleging that the "BOP altered my request"

regarding FOIA Request No. 2016-04357 (Id., p. 10.); and (9) A copy of a letter dated April 27,

2016, from Supervisory Administrative Specialist Priscilla Jones acknowledging receipt of

Plaintiff's administrative appeal regarding the BOP's action on FOIA Request No. 2016-00733

(Id., p. 11.).

## FACTUAL HISTORY

By "FOIA Request" dated on August 3, 2015, Plaintiff requested that the BOP provide him a copy of his "lab results for blood tests done at the Federal Medical Center (FMC) in Rochester, Minn." (Document No. 18-1, p. 2.) By letter dated August 14, 2015, the DOJ acknowledged receipt of Plaintiff's "FOIA Request" for "lab results for blood tests done at the Federal Medical Center in Rochester, Minnesota" (FOIA Request No. 2015-07079). (Id., pp. 4 – 5.) A search was conducted on August 18, 2015, where 23 pages of possible responsive medical records were located. (Id., p. 7.) By letter dated August 27, 2015, Defendant Mellady notified Plaintiff that 20 pages of responsive records were located regarding his FOIA request and such documents were attached to the letter. (Id., p. 15.) The three pages not included were the following documents, which were determined to be non-responsive to Plaintiff's "FOIA Request:" (1) A copy of a letter to Dr. Moody from Plaintiff dated January 2, 2015; (2) A chart of "Life-Threatening (Panic) Limits;" and (3) A general "Result Chart." (Id., pp. 11 – 13.)

By letter dated September 22, 2015, Plaintiff notified Defendant Mellady that one page that had been released was illegible, pages were missing from the Oklahoma City VA report, and "several lab tests from 2012 and all of the lab test results from 2014" were missing from the documents provided to Plaintiff in response to his "FOIA Request" (FOIA Request Nos. 2015-07079 and 2016-00329). (Id., pp. 17 – 18.). On October 9, 2015, Ms. Wahl sent an e-mail to Johnna Todd requesting the following: (1) A "better copy" of the illegible document; (2) Verification that she has the entire lab report from Oklahoma City; and (3) A search for records from 2012 and 2014. (Id., p. 21.) By letter dated October 19, 2015, Defendant Mellady notified

Plaintiff, in pertinent part, as follows:

> In response to your request, staff located 43 pages of responsive records, which were forwarded to this office for a release determination. After careful review, we determined 42 pages can be released in their entirety and 1 page must be withheld in its entirety. Copies of releasable records are attached.

> Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, records were redacted or withheld in full from disclosure to you under the following exemptions: (b)(7)(C) and (b)(7)(F).

> The record which you stated was unreadable was a carbon of the original lab test results and not a separate lab test. As for the Oklahoma City lab results, no pages were missing. The page numbers at the top of the page were fax transmittal page numbers in which multiple test results for multiple inmates are sent. The lab reports you received were complete reports.

(Id., pp. 27 - 28.) On November 18, 2015, the DOJ denied Plaintiff's appeal finding that "the BOP's response was correct and that it has now conducted an adequate, reasonable search for responsive records subject to the FOIA." (Id., pp. 32 - 33.) On December 3, 2015, Defendant Mellady provided Plaintiff with a legible copy of the illegible document. (Id., p. 35.)

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing

sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

**1.      Department of Justice as a Party:**

In their Motion for Summary Judgment, Defendants first argue that "[t]he Department of Justice, of which the Bureau of Prisons is a component, is the proper party in this action." (Document No. 20, pp. 2 – 3.) Accordingly, Defendants argue that they should be dismissed and the DOJ substituted as the appropriate defendant. (Id.) Plaintiff fails to address the foregoing issue in his Response. (Document No. 23.)

It is well established that "[i]ndividual federal employees are not subject to suit under FOIA." Ginarte v. Mueller, 534 F.Supp.2d 135, 136 (D.D.C. 2008)(citations omitted); also see Whittle v. Moschella, 756 F.Supp. 589, 596 (D.D.C. 1991)("The jurisdiction of this Court to enforce FOIA is limited to enjoining agency noncompliance, § 552(a)(4)(B), and consequently no FOIA claim may be asserted against individual federal officials.") "The only proper defendant in a FOIA case is a federal agency." Thomas v. Federal Aviation Admin., 2007 WL 219988, * 3 (D.D.C. Jan. 25, 2007)(citing Jefferson v. Reno, 123 F.Supp.2d 1, 3 (D.D.C. 2000); also see Earle v. Holder, 815 F.Supp.2d 176, 180 (D.D.C. 2011)(dismissing individual officials

13

and substituting the DOJ as the proper defendant in a case involving the BOP). To the extent Plaintiff is asserting a FOIA claim against Defendants Mellady and the BOP, the undersigned finds that the DOJ must be substituted as the defendant. Accordingly, the undersigned recommends that Defendants Mellady and the BOP should be dismissed and the DOJ substituted as the Defendant.

**2.      Adequacy of Search:**

In their Motion for Summary Judgment, Defendants next argue that "[t]he agency conducted an adequate search." (Document No. 20, pp. 3 – 4.) Defendants state that "Plaintiff's medical record was searched for responsive documents by a Medical Records Administrative Specialist at FCC Florence on two occasions." (Id.) Defendants argue that the search was clearly adequate and this action should be dismissed. (Id.)

In Response, Plaintiff argues that "Defendants are still withholding responsive records." (Document No. 23, p. 1.) Specifically, Plaintiff alleges that "Defendants are still withholding the lab results from 7-15-2013 through 7-24-2014 even after the 'expanded scope' search." (Id., pp. 9 – 10.) Plaintiff further complains that "the original package of 20 pages of responsive records contained six pages of record that were non-responsive 'cosign/review' entries and one page that was useless because it was far from being legible."[5] (Id., p. 8.) Plaintiff states that prison officials have concealed his Hepatitis-C diagnosis for over a decade. (Id., p. 20.) Plaintiff further asserts that prison officials are denying him proper medical, dental, and eye treatment.[6] (Id., pp.

---

[5] Plaintiff does not dispute that he received a legible copy of the illegible document.

[6] The undersigned notes that the above allegations involve non-parties and involve events outside the allegations contained in the Complaint. All of the allegations against prison officials involving the lack of medical, dental, and eye care occurred outside of the State of West Virginia. Plaintiff fails to allege any type of contact between the State of West Virginia and these

14

9 – 24.)

Judicial review of an agency's denial of a FOIA request is de novo. 5 U.S.C. § 552(a)(4)(B). Any non-exempt portion of a record must be disclosed. 5 U.S.C. § 552(b). Subsection 552(b) sets forth nine exemptions to the disclosure requirement. See Wickwire Gavin v. United States Postal Service, 356 F.3d 588, 591 (4th Cir. 2007). An exemption, however, must be narrowly construed in favor of disclosure. J.P. Stevens Co. v. Perry, 710 F.2d 136 (4th Cir. 1983). The FOIA places the burden of justifying nondisclosure on the agency. See 5 U.S.C. § 552(a)(4)(B). Thus, the agency has the burden of demonstrating that any document withheld falls within a stated exemption. Id. The agency may satisfy its burden through the use of affidavits that are relatively detailed, nonconclusory, and submitted in good faith. Simmons v. U.S. Dept. of Justice, 796 F.2d 709, 711 (4th Cir. 1986). Specifically, the Fourth Circuit has stated:

> If the government fairly describes the contents of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, a district court should uphold the government's position. The Court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.

Spannaus v. U.S. Dept. of Justice, 813 F.2d 1285, 1289 (4th Cir. 1987)(citing Barney v. IRS, 618 F.2d 1268, 1272 (8th Cir. 1980)).

"In judging the adequacy of an agency search for documents the relevant question is not whether every single potentially responsive document has been unearthed, but whether the agency has demonstrated that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" Ethyl Corp. v. United States Environmental Protection Agency, 25 F.3d 1241, 1246 (4th Cir. 1994)(quoting Perry v. Block, 684 F.2d 121, 128 (D.C. Cir. 1982) and Weisberg v. United States Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). To

---

prison officials. Accordingly, this Court does not have jurisdiction to consider such claims.

show the reasonableness of a search, the agency must set forth sufficient information in its affidavits for a court to determine that the search was adequate. <u>Nation Magazine v. United States Customs Service</u>, 71 F.3d 885, 890 (D.C.Cir. 1995). An agency affidavit that "simply avers that the search was conducted in a manner 'consistent with customary practice and established procedure' is insufficient. <u>Id.</u> at 1246-47. Instead, "the affidavit must be reasonably detailed, 'setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive material (if such records exist) were search' so as to give the requesting party an opportunity to challenge the adequacy of the search." <u>Id.</u> at 1247(citing <u>Oglesby v. United States Department of Army</u>, 920 F.2d 57, 68 (D.C.Cir. 1990)). "[I]f an agency establishes the reasonableness of its search, agency affidavits are accorded a presumption of good faith by the Court, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" <u>Pinson v. United States Department of Justice</u>, 61 F.Supp.3d 164, 177 (2015)(citing <u>SafeCard Services Inc. v. S.E.C.</u>, 926 F.2d 1197, 1200 (D.C.Cir. 1991).

The Declaration of Sharon Wahl, Paralegal at the Beckley Consolidated Legal Center,[7] and the Declaration of Yvette Fetterhoff, Medical Records Administrative Specialist at FCC Florence, demonstrate the adequacy of the BOP's search and proper disclosure. Ms. Wahl declares that in her position she has access to the BOP's SENTRY computer database, inmate central and medical files, and FOIA Express, which is the BOP's computerized FOIA processing and tracking system. (Document No. 19, p. 1, ¶ 2.) Ms. Fetterhoff declares that in her position, she has access to medical records of inmates in BOP custody. (Document No. 18-2, p. 1, ¶ 2.) On

---

[7] Due to a backlog in FOIA processing, Plaintiff's FOIA request was processed at the Beckley Consolidated Legal Center. (Document No. 19, p. 1.)

16

August 3, 2015, Plaintiff submitted a "FOIA Request" requesting that the BOP provide him a copy of his "lab results for blood tests done at the Federal Medical Center (FMC) in Rochester, Minn" (FOIA Request No. 2015-07079). (Document No. 18-1, p. 2.) The search for Plaintiff's records was conducted by Ms. Fetterhoff on August 18, 2015, who located 23 pages of medical records that were potentially responsive to Plaintiff FOIA request. (Document No. 19, p. 1, ¶ 6 and Document No. 18-2, p. 1, ¶ 4.) Ms. Wahl states that following the above search, 24 pages of responsive records were scanned into FOIA Express. (Document No. 19, p. 1, ¶ 7.) Ms. Wahl explains that the extra page uploaded into FOIA Express was "the back side of a letter that was blank other than blue lines and bleed-through from the front side of the letter." (Id., p. 2, ¶ 10.) Ms. Wahl states that the records uploaded by FCC Florence were reviewed at the Beckley Consolidated Legal Center, where it was determined that four pages uploaded by FCC Florence were not responsive. (Id., ¶¶ 9 – 10.) Specifically, Ms. Wahl explains that three pages were deemed non-responsive because "Plaintiff had only requested copies of his lab results for blood tests and those three pages were not blood test results" and the blank page containing only blue lines and bleed-through was deemed non-responsive. (Id.) Thus, 20 pages were released to Plaintiff in their entirety on August 27, 2015.[8] (Id., ¶ 11.)

By letter dated September 22, 2015, Plaintiff notified Defendant Mellady of the following concerning documents provided to Plaintiff in response to his "FOIA Request:" (1) That one released page was illegible; (2) That pages were missing from the Oklahoma City VA report; and (3) That "several lab tests from 2012 and all of the lab test results from 2014" were

---

[8] The August 27, 2015, letter releasing the documents was signed by D. Stevens, Supervisory Attorney at the Beckley Consolidated Legal Center, for Defendant Mellady. (Document No. 19, p. 2, ¶ 12.)

missing. (Document No. 18-1, pp. 17 – 18.). Ms. Wahl explains that Plaintiff's September 22, 2015 letter was construed "as a request to expand the scope of the original FOIA request to include test results from all facilities rather than only FMC Rochester during the time frames Plaintiff provided" (FOIA Request Nos. 2015-07079 and 2016-00329). (Document No. 19, p. 2, ¶ 14.) Ms. Wahl states that Ms. Fetterhoff was asked to determine the following: (1) Whether there were additional lab results from 2012; (2) Whether there were any lab results for 2014; (3) Whether there were additional pages to the Oklahoma City VA report; and (4) Whether there was a better copy of the page that was illegible. (Id., ¶ 15.) Ms. Fetterhoff conducted a second search of Plaintiff's medical records and submitted 43 pages of potentially responsive documents to the Beckley Consolidated Legal Center. (Id., ¶ 16 and Document No. 18-2, p. 1, ¶¶ 5 - 6.) On October 19, 2015, the Beckley Consolidated Legal Center released 42 of the 43 pages in their entirety to Plaintiff. (Id., p. 3, ¶ 20.) Ms. Wahl explains that "the page that was withheld in full was Plaintiff's HIV test results, which was withheld because inmates may not possess copies of their HIV results while in custody." (Id., ¶ 21.) This page was withheld pursuant to 5 U.S.C. §§ 522(b)7(C) and (b)(7)(F). (Id., ¶ 20.) Ms. Wahl further explains that by letter dated October 19, 2015, the Beckley Consolidate Legal Center further informed Plaintiff of the following: (1) The "pages from the Oklahoma City VA lab were not missing, and that the numbers at the top of the pages from the Oklahoma City VA lab were fax transmittal page numbers, that test results for multiple inmates had been sent via that fax, and that Plaintiff had receive all of the fax pages that pertained to him;" and (2) The "page he stated was illegible was a carbon copy." (Id., ¶¶ 22 and 23.) Ms. Wahl states that a legible copy of the illegible carbon copy page was mailed to Plaintiff on December 3, 2015. (Id., ¶ 29.)

Based upon the foregoing, the undersigned finds that the DOJ has demonstrated that it has conducted a "search reasonably calculated to uncover all relevant documents." Although Plaintiff contends that additional responsive records exist, Plaintiff's claim of the existence of such "responsive records" is purely speculative. The foregoing declarations from Ms. Wahl and Ms. Fetterhoff are accorded "a presumption of good faith by the Court, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" See Pinson, 61 F.Supp.3d at 177. The undersigned notes that the only relevant document produced by Plaintiff in support of his claim that the DOJ is withholding responsive medical records is a copy of a "Bureau of Prisons Health Service Clinical Encounter" dated July 10, 2013.[9] (Document No. 23, p. 27.) The foregoing medical record reveals that labs were ordered by DO Allred on July 10, 2013. (Document No. 23, p. 27.) Plaintiff, however, acknowledges that he has lab results for July 15, 2013. (Document No. 23, p. 9.) Thus, the foregoing document does not support Plaintiff's claim that the DOJ conducted an inadequate search or is withholding responsive documents.[10] As stated above, the relevant question when determining the adequacy of a search is not whether every single potentially responsive document has been unearthed, but whether the agency has demonstrated that it has conducted a "search reasonably calculated to uncover all relevant documents." The undersigned finds that the DOJ has demonstrated that it

---

[9]  The undersigned notes that Plaintiff files numerous administrative remedy documents as Exhibits. Such documents are irrelevant as Defendants have not asserted that Plaintiff failed to properly exhaust.

[10] Although Plaintiff argues that Defendants are withholding responsive lab results because they wish to conceal the fact that he is positive for Hepatitis-C, Plaintiff's medical records for a chronic care visit reveals that Plaintiff has been diagnosed with chronic Hepatitis-C. (Document No. 23, p. 27.) Plaintiff further provides a copy of his lab result for February 28, 1997, indicating that Plaintiff was positive for Hepatitis-C (*Id.*, p. 30.)

conducted such a reasonably calculated search. Accordingly, the undersigned respectfully recommends that Defendants' Motion for Summary Judgment (Document No. 18) be granted.

**3.      Motion for Preliminary Injunction:**

In his "Motion for Preliminary Injunction," Plaintiff requests that this Court direct the DOJ or United States Attorney General Loretta Lynch to do the following: (1) "Release [Plaintiff's] requested records;" (2) "Remove the staff members from BOP employment who have violated the criminal statutes and [Plaintiff's] constitutional rights;" and (3) "Provide for the safekeeping and care of all persons charged with or convicted of offenses in accordance with 18 U.S.C. § 4042 and the Eighth Amendment." (Document No. 34.) In support Plaintiff states that his Response to Defendants' Motion for Summary Judgment "clearly states and gives evidence of criminal and constitutional violations by Yvette Fetterhoff, Anthony Osagie, and Dr. David Allred." (Id., p. 2.) Plaintiff contends that "these three DOJ employees have withheld and are withholding prescriptions, eyeglasses, life-saving medications, etc., in violation of the Eighth Amendment."[11] (Id.) Plaintiff further alleges that "the three employees above have committed wire fraud." (Id.) Plaintiff, therefore, concludes that he has "a statutory, civil, and constitutional right to this relief." (Id.)

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's

---

[11] As stated above, Plaintiff's claim of inadequate medical treatment is outside the scope of the allegations contained in his Complaint. Plaintiff should assert such a claim in the district in which he contends he is receiving such inadequate medical care.

attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' Granny Goose, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).

Based upon the foregoing, the undersigned has recommended that Plaintiff's Complaint be dismissed. Accordingly, the undersigned finds that Plaintiff's request for injunctive relief should be denied as he cannot establish that he is likely to succeed on the merits.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the Defendants' Motion for Summary Judgment (Document No. 18), **DENY** Plaintiff's Motion for Preliminary Injunction (Document No. 34), **DISMISS** Plaintiff's Complaint (Document No. 1), and remove this matter from the Court's docket.

21

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: July 12, 2016.

Omar J. Aboulhosn
United States Magistrate Judge

22